**DEFENDANT'S APPENDIX**

**PART F**

Westlaw.

Not Reported in F.Supp.                                                                                                        Page 1
Not Reported in F.Supp., 1992 WL 503590 (W.D.Wash.), 1993 A.M.C. 1290
**(Cite as: Not Reported in F.Supp.)**

▷
Strok v. F/T Northern Jaeger
W.D.Wash.,1992.

United States District Court, W.D. Washington.
Svyatoslav STROK, Plaintiff,
v.
F/T NORTHERN JAEGER, Northern Jaeger Seafoods, Inc., a Washington Limited Partnership, and Oceantrawl Inc., a Washington corporation, Defendants.
**No. C91-1194R.**

Sept. 28, 1992.

Malcolm Stewart McLeod, Seattle, WA, for plaintiff.
Edward M. Archibald, Seattle, WA, for defendant.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ROTHSTEIN, Chief Judge.
*1 THIS MATTER comes before the court on the motion of defendants, F/T NORTHERN JAEGER, Jaeger Seafoods, Inc., and Oceantrawl, Inc., for partial summary judgment on the issue of liability for plaintiff's alleged stomach injury and associated complaints. Having reviewed the matter, together with all documents filed in support and in opposition, the court finds and rules as follows:

I. FACTUAL BACKGROUND

Plaintiff, Svyatoslav Strok, seeks damages for personal injuries he allegedly incurred while employed aboard the defendants' vessel, the F/T NORTHERN JAEGER. Defendants now move for partial summary judgment on the issue of liability for plaintiff's alleged stomach injury and associated complaints.

While employed aboard the F/T NORTHERN JAEGER, plaintiff assisted in unloading cartons of frozen surimi. It is undisputed for purposes of this motion that the cartons of surimi weighed approximately 44 pounds each. Glessner Deposition 35:14-18 (attached as Exhibit 4 to the Affidavit of Russell R. Williams). Plaintiff alleges that he was struck in the abdomen by cartons that were thrown to him in a negligent manner. Plaintiff claims that after being struck in the abdomen by the cartons of surimi he began to experience severe pain inside his stomach. Other symptoms include bleeding, vomiting blood, bruising, swelling, an inability to eat, and the feeling of nausea upon smelling food. Statement of Svyatoslav Strok 2:12-16; Strok Deposition 102; 105. Plaintiff also stated that while enroute to Alaskan waters he experienced seasickness so severe that he thought he would die. Strok Deposition 108:25-109:3. Plaintiff's testimony is supported by the testimony of Nickolay Stollyarchuk, a fellow crewmember aboard the F/T NORTHERN JAEGER. Mr. Stollyarchuk averred that the plaintiff was struck in the stomach by a box of frozen fish and knocked flat on his back, and that later the plaintiff vomited blood and would fall down two to three times per shift. Statement of Nickolay Stollyarchuk 2:9-15; 3:11-15.

After arriving in Alaska, plaintiff reported his symptoms to his supervisor and was examined at a nearby clinic. He returned to Seattle where he has been seen by several doctors. Plaintiff was first seen by Dr. Anderson, a general medical practitioner, on July 18, 1991. Dr. Anderson examined plaintiff's stool for blood and found none. He also examined plaintiff's heart, lungs, and abdomen, and found them to be normal. Dr. Anderson Deposition 13:1-20. (attached as Exhibit 3 to the Affidavit of Christopher W. Nicoll). Dr. Putnam, a specialist in gastroenterology, and internal medicine, saw plaintiff on several occasions between July 29, 1991 and October 22, 1991, for his alleged injuries. Dr. Putnam conducted several tests including a stomach x-ray, laboratory

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A    51

Not Reported in F.Supp.  Page 2
Not Reported in F.Supp., 1992 WL 503590 (W.D.Wash.), 1993 A.M.C. 1290
**(Cite as: Not Reported in F.Supp.)**

blood-work, an upper endoscopy of the upper abdominal region, an ultrasound, and a flexible sigmoidoscopy of the lower abdominal region. He was unable to determine the cause of plaintiff's symptoms. According to Dr. Putnam plaintiff failed to show-up when additional tests were scheduled.

*2 Plaintiff was treated by Dr. John Brandabur between January 14, 1992, and May 4, 1992. Dr. Brandabur is also a specialist in gastroenterology and internal medicine. Like Dr. Putnam, Dr. Brandabur conducted several medical tests on plaintiff in an attempt to determine the cause of his symptoms. Dr. Brandabur was ultimately unable to make a causal diagnosis. Both specialists have indicated that they would like to conduct further tests on plaintiff such as small bowel x-rays, follow-up on blood-count, reexamination with specific testing for a hernia, and an ERCP (endoscopic retrogram cholangiole pancreatogram) to rule out pancreatic ductal disruption before making a causal diagnosis. Dr. Putnam Deposition 34:19-23; Dr. Brandabur Deposition 20:22-25; 21:1-6 (attached as Exhibits 1 and 2 to the Affidavit of Christopher W. Nicoll).

II. DISCUSSION

A grant of summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630-631 (9th Cir.1987); *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir.1985). Summary judgment is not appropriate if "a result other than that proposed by the moving party is possible under the facts and applicable law." *See Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th Cir.1981), *cert. denied,* 459 U.S. 1200 (1983).

Defendants argue that because the causal connection between plaintiff's alleged original injuries and his subsequent continuing symptoms is not obvious the determination of causation is beyond the purview of common knowledge. According to defendants, plaintiff must introduce expert medical testimony establishing causation. Defendants cite extensive case law in support of this proposition. *See e.g., Moody v. Maine Central R.R. Co.,* 823 F.2d 693 (1st Cir.1987); *Collins v. Am. Export Lines, Inc.,* 165 F.Supp. 256 (S.D.N.Y.1958); *Money v. Manville Corp. Asbestos Disease Comp. Trust Fund,* 596 A.2d 1372 (Del.1991); *Albert v. Alter,* 381 A.2d 459 (Pa.1977); *Sears, Roebuck & Co. v. Hurst,* 652 S.W.2d 563 (Tex.Ct.App.1983); *Greene v. Flewelling,* 366 So.2d 777 (Fla.Dist.Ct.App.1979).

In *Moody* the plaintiff alleged that his employer's harassment caused him to experience angina. The plaintiff was unable to provide medical testimony which linked the employer's acts to his angina. In affirming summary judgment against the plaintiff for failure to provide medical testimony on causation, the court said,
Where the conclusion [of causation] is not one within common knowledge, expert testimony may provide a sufficient basis for it, but in the absence of such testimony it may not be drawn.

*Moody,* at 695.

In *Money,* the court upheld a directed verdict against plaintiffs who failed to introduce medical testimony on causation. The court said,
*3 [I]t has generally been recognized that the causation of latent physical conditions must rest upon the individualized findings, and opinion of a trained physician.

*Money,* at 1376.

In *Sears, Roebuck,* the court reversed a verdict for the plaintiff because the plaintiff failed to introduce medical testimony supporting her theory of causation. The plaintiff in that case testified that an improperly installed heating and air conditioning system emitted smoke and soot that caused her to experience a number of symptoms including headaches, stomach aches, and coughing. The court held:
While there is little question that a lay jury could conclude that smoke and soot can be the cause of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00251-JJF    Document 81-6    Filed 06/27/2007    Page 4 of 9

Page 3 of 4

Not Reported in F.Supp.                                                                                                     Page 3
Not Reported in F.Supp., 1992 WL 503590 (W.D.Wash.), 1993 A.M.C. 1290
**(Cite as: Not Reported in F.Supp.)**

coughing, we cannot see that common experience would lead a jury member to the conclusion that smoke and soot ... could cause head and stomach aches for some two or three months thereafter.

*Sears, Roebuck,* at 565.

In *Greene,* the appellate court upheld a decision setting aside the verdict in favor of a plaintiff who claimed an auto accident caused him to lose his senses of smell and taste. The plaintiff's physician testified that there was no evidence that the auto accident caused plaintiff's alleged symptoms. The court ruled that the plaintiff's evidence was in itself insufficient to place the issue of causation before the jury, especially in light of the medical testimony opposed to the conclusion drawn by the plaintiff. *Greene,* at 780-781.

Defendants argue that the statements of plaintiff, his witness Nickolay Stollyarchuk, and his counsel Malcolm McLeod, must be stricken because they are not qualified under Federal Rule of Evidence 702 to give expert medical testimony on the issue of causation. Defendants contend that plaintiff's failure to provide competent medical testimony regarding causation entitles them to partial summary judgment as a matter of law on the issue of defendant's liability for plaintiff's alleged continuing abdominal injuries.

Plaintiff, on the other hand, argues that under the Federal Rules of Evidence the factual issue of causation in this case can be developed through lay opinion testimony:
If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of the fact in issue.

Fed.R.Evid. 701

Plaintiff argues that Mr. Stollyarchuk's testimony was a rationally based perception of what happened to plaintiff and is helpful to a determination of causation. Mr. Stollyarchuk was an eyewitness to the repeated pounding that plaintiff incurred to his abdomen and the subsequent symptoms he experienced. Mr. Stollyarchuk testified that after the trauma to plaintiff's abdomen he observed plaintiff double-up and fall over in pain, and on a daily basis he observed plaintiff vomit blood.

*4 Plaintiff further argues that Washington state courts allow lay testimony as to general appearances of health, *Goertz v. Continental Life Ins. & Inv. Co.,* 163 P. 938, 95 Wash. 358 (1917); as to appearance before and after an accident, and as to complaints of pain, *Peterson v. Seattle Traction Co.,* 63 P. 539, 23 Wash. 615 (1900), 53 L.R.A. 586, modified 65 P. 543, 23 Wash. 615 (1901), 53 L.R.A. 586; and testimony of the plaintiff regarding how he feels, and how he is able to function, before and after a given accident. *Egede-Nissen v. Crystal Mountain, Inc.,* 606 P.2d 1214, 93 Wash.2d 127 (1980).

Plaintiff concludes that causation in this case is within the purview of common knowledge and, therefore, expert medical testimony is not required to assist the trier of fact.[FN1]

The court finds that defendant's position is persuasive and that *Sears, Roebuck* is directly on point. Here, as in that case, the plaintiff suffered symptoms that a lay jury could conclude were causally related to the alleged injury. However, as *Sears, Roebuck* points out, causation becomes extremely tenuous and difficult to determine through common experience when such symptoms prevail for over a year especially when several doctors and an exhaustive battery of medical tests failed to establish the cause.

Additionally, other evidence offered by plaintiff requires medical testimony for explication. Plaintiff claims he is unable to eat, yet he fails to lose weight. He claims to have a recurring bulge on the right side of his abdomen, yet no one else has seen it. These are questions that the jury requires expert assistance in determining. Plaintiff has failed to provide that assistance. It should be made clear that the court's ruling as to the need for expert medical testimony does not extend to plaintiff's initial injury and on-ship symptoms, as the court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A    53

Not Reported in F.Supp.                                                                                                                                          Page 4
Not Reported in F.Supp., 1992 WL 503590 (W.D.Wash.), 1993 A.M.C. 1290
**(Cite as: Not Reported in F.Supp.)**

finds that these events comprise an appropriate subject for lay testimony.

Furthermore, plaintiff's claims for defendants' failure to pay wages and for maintenance and cure are unaffected by the summary judgment ruling. A jury could find that plaintiff's alleged injury and symptoms were manifest at the time of his service aboard defendants' vessel.[FN2]

### III. CONCLUSION

NOW, THEREFORE, defendants' motion for partial summary judgment on the issue of liability for plaintiff's alleged stomach injury and associated complaints is GRANTED.

> FN1. The court acknowledges defendants' concerns regarding statements of plaintiff, his witness, Nickolay Stollyarchuk, and counsel Malcolm McLeod as being irrelevant and incompetent with respect to the motion for summary judgment. The court considers those statements only to the extent that they comply with Federal Rule of Civil Procedure 56(e). Hearsay statements and statements beyond the personal knowledge of the declarants have not been considered.
>
> FN2. In order to recover maintenance and cure, a seaman need only show that the illness manifested itself during service, negligence or fault of either shipowner, seaman or master is immaterial to the award. *Gajewski v. U.S.,* 540 F.Supp. 381 (1981).

W.D.Wash.,1992.
Strok v. F/T Northern Jaeger
Not Reported in F.Supp., 1992 WL 503590 (W.D.Wash.), 1993 A.M.C. 1290

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A    54

Westlaw.

Slip Copy                                                                                                          Page 1
Slip Copy, 2007 WL 1643197 (C.A.3 (Pa.))
**(Cite as: Slip Copy)**

U.S. v. Williams
C.A.3 (Pa.),2007.
Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.NOT PRECEDENTIAL
Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)
United States Court of Appeals,Third Circuit.
UNITED STATES of America
v.
Darryl WILLIAMS, Appellant.
No. 04-4267.

Submitted Under Third Circuit LAR 34.1(a) May 10, 2007.
Filed June 7, 2007.

Appeal from the United States District Court for the Eastern District of Pennsylvania, (D.C. Criminal No. 03-cr-00700), District Judge: Honorable Michael M. Baylson.

Salvatore L. Astolfi, Office of United States Attorney, Philadelphia, PA, for United States of America.
Elizabeth T. Hey, Defender Association of Philadelphia, Federal Court Division, Philadelphia, PA, for Appellant.

Before RENDELL, JORDAN and ALDISERT, Circuit Judges.

OPINION OF THE COURT
RENDELL, Circuit Judge.
*1 Darryl Williams was convicted by a jury of two counts of bank robbery in violation of 18 U.S.C. § 2113(a). After an initial mistrial due to a hung jury, a new trial yielded a guilty verdict. Williams was sentenced to a term of imprisonment of 108 months, 3 years supervised release, a $1,000 fine, restitution in the amount of $862, and a $200 special assessment. Williams appeals his conviction. He argues that the District Court erred in admitting the testimony of a "reverse projection photogrammetry" expert because the government failed to demonstrate that the expert's technique satisfies any of the admissibility criteria set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), or possesses any other indicia of reliability. We have jurisdiction over Williams' appeal pursuant to 28 U.S.C. § 1291 and we will affirm.

I.

Williams was charged with robbing two banks in June 2003. In the first robbery on June 6, a man entered Sovereign Bank in Folsom, Pennsylvania, demanded money from a teller and ran out after receiving $640. This robbery was captured on the bank's surveillance camera. In the second robbery on June 18, a man who, witnesses say, bore a resemblance to the Sovereign robber, entered a Citizens Bank in Glenolden, Pennsylvania. This man demanded money from the teller station but grabbed $422 from the teller before she could comply.

The primary issue at trial was the height of the bank robber in each of these robberies. Witnesses to the robberies testified that the robber was anywhere from 5′2″ to 5′7″ tall. Williams is 6′ tall. The government sought to introduce the expert testimony of FBI agent Paul Smith concerning the height of the Sovereign Bank robber. Based on the video footage from the surveillance camera, Smith determined that the suspect was closer to 5′11″ than 5′2″ by applying "reverse projection photogrammetry." This method is on occasion employed by the FBI to determine the height of individuals depicted on surveillance cameras like the one that captured images of the Sovereign Bank robber. Smith testified that there is an error rate of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A   55

Slip Copy                                                                                                                    Page 2
Slip Copy, 2007 WL 1643197 (C.A.3 (Pa.))
**(Cite as: Slip Copy)**

about 1 in this type of height analysis. After holding a *Daubert* hearing to determine the admissibility of this evidence, the District Court determined that Smith's testimony was admissible.

Williams challenges the District Court's admission of Smith's testimony concerning reverse projection photogrammetry on the grounds that the technique fails to satisfy any of the five *Daubert* criteria for admission of expert testimony. The District Court found under the preponderance standard that Smith's testimony met the requirements of Federal Rule of Evidence 702. Specifically, the Court found that the testimony was based on sufficient facts or data as recounted by the expert, the testimony was a product of reliable principals and methods, that the expert had adequate training in the technique and that he has review within the FBI, which, in the trial judge's opinion, was sufficient under the applicable test. Additionally, the District Court found that the witness applied the principals and methods reliably to the facts of the case.

II.

*\*2* We review the District Court's decision for abuse of discretion. *United States v. Velasquez,* 64 F.3d 844, 847 (3d Cir.1995). Although the Supreme Court has made clear that federal trial judges, pursuant to Fed.R.Evid. 702, have a "gatekeeping" obligation to insure that only reliable and relevant expert testimony be presented to jurors, the trial judge is granted a certain degree of latitude to determine whether the *Daubert* factors or any other set of reasonable reliability criteria are reasonable measures of reliability in a particular case. *Daubert,* 509 U.S. at 593.

Rule 702 sets forth requirements for the admission of expert testimony: (1) the proffered witness must be an expert; (2) the expert must testify to scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. *Velasquez,* 64 F.3d at 848. The overriding consideration with regard to these three factors is that expert testimony should be admitted if it will assist the trier of fact. *Id.* at 849.

The parties do not dispute that Smith's testimony satisfies the first and third requirements of Rule 702 . Here, Smith presented evidence that the FBI trained him in the reverse projection photogrammetry technique and that he has employed the technique on numerous prior occasions. Additionally, it is clear that Smith's testimony is relevant to the primary issue of height in this case and that admission of his testimony would aid the trier of fact in making a determination of height.

The second requirement, that the expert testify to scientific, technical or specialized knowledge, is at issue here. The Supreme Court clarified in *Daubert* that this requirement is intended to ensure the reliability or trustworthiness of the expert's testimony. *See Velasquez,* 64 F.3d at 849 (citing *Daubert,* 509 U.S. at 590). *Daubert* enumerates a number of factors to be considered by a district court in its assessment of whether the testimony's underlying reasoning or methodology is scientifically valid and properly can be applied to the facts at issue. *Daubert,* 509 U.S. at 590. These factors are: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 742 (3d Cir.1994).

Williams argues that the District Court erred in admitting Smith's testimony because the government failed to proffer evidence demonstrating the reliability of Smith's reverse projection photogrammetery technique as it was used in this case, including evidence that the technique has been published or subjected to peer review, evidence as to the technique's error rate, evidence as to the standards controlling the technique's operation, or evidence that the technique, as used in this case, is accepted by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A   56

Slip Copy    Page 3
Slip Copy, 2007 WL 1643197 (C.A.3 (Pa.))
**(Cite as: Slip Copy)**

anyone outside of the FBI. We disagree.

*3 The trial judge is granted a certain degree of latitude to determine whether the *Daubert* factors or any other set of reasonable reliability criteria are appropriate measures of reliability in a particular case. *Daubert,* 509 U.S. at 593. All of the *Daubert* factors do not necessarily apply to each case nor are these factors a comprehensive list of all possible measures of reliability. "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999). Moreover, depending on the facts of each particular case, the factors do not have to be weighed equally. The factors merely guide the judge's determination of the admissibility of evidence, a determination to which we afford great deference.

Under the liberal *Daubert* standard, the plaintiffs do not have to prove to the judge by a preponderance of the evidence that their expert's testimony is correct, they must only show that it is reliable. The requirement of reliability is lower than the standard of correctness. A judge can find an expert opinion reliable if it is based on "good grounds" or methods and procedures of science rather than on subjective belief or unsupported speculation. *Daubert,* 509 U.S. at 590. The judge does not have to determine that these methods are necessarily the best grounds to ascertain certain facts, but only that the evidence presented will help the trier of fact.

Additionally, the reliability factor is not a strict requirement that should be used to exclude all questionably reliable evidence. "The reliability of evidence goes 'more to the weight than to the admissibility of the evidence.'" *Velasquez,* 64 F.3d at 849 (citing *United States v. Jakobetz,* 955 F.2d 786, 800 (2d Cir.1992)). In order to be admissible, evidence need only be sufficiently reliable to help the trier of fact. *In re Paoli R.R.,* 35 F.3d at 744.

Here, the government proffered a detailed explanation of the technique of reverse projection photogrammetery. Smith testified about the methodology used in the technique and detailed how the methods were applied in this case. He also testified that he has published articles about the technique and that it is employed by the FBI and by a few other law enforcement agencies.

We conclude that the District Court did not abuse its discretion in determining, based on this evidence, that the reverse projection photogrammetry technique is sufficiently reliable to satisfy the admission requirements of Rule 702. Because Smith's evidence spoke to the paramount concern in the case-the height of the robber-and because the District Court found Smith's technique to be sufficiently reliable, the District Court did not abuse its discretion in admitting Smith's testimony.

Once the foundation for admissibility required by *Daubert* has been established, concerns about the validity of an expert's conclusions should not result in the exclusion of the expert's testimony. Rather, such concerns should be presented to the jury through cross examination, presentation of contrary evidence and careful instruction on the burden of proof. *Rock v. Arkansas,* 483 U.S. 44, 61 (1987).

III.

*4 For the reasons set forth above, we will affirm Williams' conviction.

C.A.3 (Pa.),2007.
U.S. v. Williams
Slip Copy, 2007 WL 1643197 (C.A.3 (Pa.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, SARAH C. BRANNAN, hereby certify that I have caused to be deposited in the U.S. Mail, postage prepaid, the ___27th___ day of June, 2007 two true and correct copies of the following document:

DEFENDANT'S APPENDIX TO
DEFENDANT'S BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

addressed to:

Ashley Adams
P.O. Box 7652
Newark, DE 19714

        CASARINO, CHRISTMAN & SHALK, P.A.

        /s/Sarah C. Brannan
        BETH H. CHRISTMAN, ESQ.
        Del. Bar ID No. 2107
        SARAH C. BRANNAN, ESQ.
        Del. Bar ID No. 4685
        800 N. King Street, Suite 200
        P.O. Box 1276
        Wilmington, DE 19899-1276
        (302) 594-4500
        Attorneys for Defendant Sheldon