IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASHLEY ADAMS, | : |
| Plaintiff, | : |
| v. | : Civ. No. 04-251-LPS |
| JO ELLEN CHAPIN SHELDON, | : |
| Defendant. | : |

## MEMORANDUM ORDER

Pending before the Court is Plaintiff Ashley Adams' Motion for New Trial. (D.I. 172) For the reasons set forth below, the Court will DENY the motion.

## BACKGROUND

On April 20, 2004, Ashley Adams ("Plaintiff") filed suit against Jo Ellen Chapin Sheldon ("Defendant") for damages resulting from an automobile collision that occurred on April 23, 2002 (hereinafter "the accident" or "April 2002 accident"). (D.I. 1, 15) The Court held a pretrial conference on August 3, 2011. (*See* Tr. Aug., 3, 2011 pretrial conference) (hereinafter "PTC Tr.") A four-day jury trial was held in August and September of 2011. (*See* Tr. Aug. 30-31 and Sept. 1-2, 2011 trial) (hereinafter, "Trial Tr., [date]") The jury rendered a verdict finding Defendant negligent in a manner that proximately caused an automobile accident between Plaintiff's and Defendant's vehicles. (D.I. 167) However, the jury also found that Plaintiff did not suffer injuries and damages proximately caused by Defendant's negligence. (*Id.*) Plaintiff filed her new trial motion on September 12, 2011. (D.I. 172)

## LEGAL STANDARDS

Federal Rule of Civil Procedure 59(a)(1)(A) provides:

> The court may, on motion, grant a new trial on all or some of the issues – and to any party – as follows:
>
> > after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . .

Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence and a new trial must be granted to prevent a miscarriage of justice, *see Roebuck v. Drexel University*, 852 F.2d 715, 717 (3d Cir. 1988); (2) newly discovered evidence exists that would likely alter the outcome of the trial, *see Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991); (3) improper conduct by an attorney or the court unfairly influenced the verdict, *see Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 363 (3d Cir. 1999); or (4) the jury's verdict was facially inconsistent, *see Mosley v. Wilson*, 102 F.3d 85, 90 (3d Cir. 1996). *See also Zarow-Smith v. New Jersey Transit Rail Operations*, 953 F. Supp. 581, 584 (D.N.J. 1997).

The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chemical Corp. v. Darjlon, Inc.*, 449 U.S. 33, 36 (1980). Where the ground for a new trial is that the jury's verdict was against the great weight of the evidence, the court should proceed cautiously, because such a ruling would necessarily substitute the court's judgment for that of the jury. *See Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993). Although the standard for grant of a new trial is less rigorous than the standard for grant of judgment as a matter of law – in that the court need not view the evidence in the light most favorable to the verdict winner – a new trial grounded on the verdict being against the great

2

weight of evidence should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352-53 (3d Cir. 1991). Moreover, "[w]here the subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations." *Id.* at 1352.

## PARTIES' CONTENTIONS

Plaintiff advances two arguments in support of her motion. First, Plaintiff claims that the jury's verdict regarding damages was contrary to the evidence presented at trial. Second, Plaintiff contends that "reference and/or testimony concerning [certain accident] photographs violat[ed] the Court's [pretrial] order[,] [which] constituted reversible error." (D.I. 172 at 1) Specifically, Plaintiff claims to have been unfairly prejudiced by references made by Defendant's expert, Dr. Katz, to photographs showing minimal damage to the vehicles involved in the accident. Plaintiff seeks a new trial to attempt to recover at least $5,573.06 in "hospital related bills." (*Id.* at 6)

Defendant opposes the motion. (D.I. 173) In response to the first issue, Defendant argues that Plaintiff is misconstruing the testimony of defense expert Dr. Katz, who, in full context, opined that Plaintiff did not suffer injuries that were proximately caused by the April 2002 accident. Hence, in Defendant's view, the jury's finding that Plaintiff was entitled to zero damages was not contrary to the great weight of the evidence. (*See id.* at 3, 7) With respect to the second issue, Defendant contends that the photographs were properly used for impeachment purposes and, in any event, any error was harmless. (*See id.* at 7)

3

Below, the Court addresses – and rejects – both of Plaintiffs' grounds for a new trial.

## THE JURY'S FINDING OF NO DAMAGES

Plaintiff claims that the following damages were proximately caused by the April 2002 accident: 1) a C7 lamina fracture; 2) a herniated disc; and 3) costs accrued in obtaining treatment. (D.I. 172 at 3) Defendant's expert, Dr. Katz – who testified by deposition – opined that Plaintiff's injuries did not result from the accident. Instead, Dr. Katz testified that, based on the evidence he reviewed, "there's no indication that [the injuries] w[ere] caused by" the accident. (Trial Tr., Aug. 31, 2011 at 208) In particular, Dr. Katz testified that the C7 lamina fracture was a chronic condition and that any herniated disc was not caused by or even associated with the accident. (*Id.*) Dr. Katz further opined that the treatment Plaintiff received from April 2002 through the time of his testimony (in August 2011) was not required as a result of the accident. (*Id.*)

Furthermore, as Defendant explains, Dr. Katz testified that Plaintiff's cervical fracture was most likely old and that her treatment and prescriptions before and after the accident were indistinguishable. (D.I. 173 at 3) (citing Trial Tr., Aug. 31, 2011 at 193-95, 209-10) He further opined that the medical records he reviewed did not show Plaintiff's condition was different immediately after the April accident from what it had been before the accident. (Trial Tr., Aug. 31, 2011 at 209)

To the extent Dr. Katz opined that Plaintiff suffered injury caused by the April 2002 accident, his opinion was based on "history," by which Dr. Katz meant it was based in substantial part on what Plaintiff told him and told her treating physicians. (Trial Tr., Aug. 31, 2011 at 233, 239) Thus, to the extent the jury found that Plaintiff lacked credibility, the jury was likewise free

4

to reject any opinion of Dr. Katz based on Plaintiff's self-reporting. *See Reed v. Gerbec*, 1999 WL 1442021, at *1-2 (Del. Super. Sept. 24, 1999) (denying motion for new trial following jury verdict of zero damages – despite defendant's expert's agreement that plaintiff suffered soft tissue injury – where "the credibility of the Plaintiff was very much at issue," in part because plaintiff was a "symptom exaggerator").

Here, Plaintiff's credibility was very much in dispute. Among many other things, it was undisputed that Plaintiff had been involved in another automobile accident on February 19, 2002, just two months before the accident giving rise to this lawsuit. (*See* D.I. 172 at 4) One of the issues the jury had to consider was whether, assuming Plaintiff had been injured in 2002, Plaintiff's injuries were due to the February accident and/or the April accident. Additionally, as Defendant explains:

> The jury also heard that plaintiff denied previous symptoms, treatment or use of narcotics when questioned at her deposition, all of which was untrue. The jury was in the best position to determine credibility of the plaintiff. If it found she was not credible, then it was permitted to find that plaintiff did not prove that any complaints or physical findings she had after the April 2002 accident were caused by that accident.

(D.I. 173 at 5-6) The Court agrees with this assessment.

The jury was free, as it was instructed, to believe or disbelieve Dr. Katz's testimony, in whole or in part, just like that of any other witness. (*See* D.I. 163 at 22 (final jury instruction: "Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case."))[1] Plaintiff's experts, Dr. Damon Carey and Dr. Peter Bandera, offered opinions different from Dr. Katz's (*see* Trial Tr., Aug. 30, 2011 at 138, 215), and the jury

---

[1] There was no objection to this instruction. (*See* D.I. 155 at 25 (joint proposed jury instruction); Trial Tr., Aug. 31, 2011 at 246))

5

was free to believe or disbelieve their testimony as well.

In this regard, it is noteworthy that Dr. Katz testified that "[i]f somebody says they hurt, they hurt." (Trial Tr., Aug. 31, 2011 at 237) The jury, having watched Plaintiff testify – something Dr. Katz, of course, did not do – could have reasonably reached a different conclusion. Specifically, the jury could have reasonably concluded that Plaintiff was not hurt by the April 2002 accident. *See Reed*, 1999 WL 1442021, at *2 ("[T]he jury could have reasonably based its verdict for the Defendant on the evidence concluding that Plaintiff had not suffered anything other than minimal damage. The jury could have reasonably concluded that Plaintiff's complaints were not credible and therefore rejected [the defense expert's] opinion that Plaintiff suffered a soft tissue injury. An award of zero damages is not inconsistent as a matter of law with a finding of negligence which was a proximate cause of injury to the plaintiff.").[2]

The jury's determination that the April 2002 accident did not proximately cause Plaintiff's damages is not against the great weight of the evidence. The verdict does not constitute a miscarriage of justice, shock the conscience, or cry out to be overturned.[3]

---

[2] Thus, for reasons similar to those discussed by the Court in *Reed*, 1999 WL 1442021, at *1, this case is distinguishable from *Maier v. Santucci*, 697 A.2d 747, 748-49 (Del. 1997), on which Plaintiff relies heavily. In *Maier*, the Delaware Supreme Court held:

> where the evidence conclusively establishes the existence of an injury, however minimal, a jury award of zero damages is against the weight of the evidence. . . . [O]nce the existence of an injury has been established as causally related to the accident, a jury is required to return a verdict of at least minimal damages.

*Id.* Here, however, the jury found that the evidence did not establish the existence of an injury or damages proximately caused by the accident, and the Court concludes that the record lacks conclusive evidence to the contrary.

[3] *See Young v. Frase*, 702 A.2d 1234, 1236-37 (Del. 1997) ("Under Delaware law, enormous deference is given to jury verdicts . . . . It follows that, in the absence of exceptional

6

Accordingly, Plaintiff's first argument does not provide a meritorious basis for granting a new trial. *See Young*, 702 A.2d at 1237 ("As long as there is a sufficient evidentiary basis for the amount of the award, the jury's verdict should not be disturbed by a grant of additur or a new trial as to damages.").

## THE PHOTOGRAPHS

Plaintiff argues that Defendant improperly used photographs of the April 2002 accident during her examination of Dr. Katz, Defendant's expert witness. (D.I. 172 at 1) The photographs at issue (hereinafter, "the photographs" or "photos") depict Plaintiff's and Defendant's vehicles after they were involved in the accident and show minimal physical damage to those vehicles. (D.I. 54 at 8) Plaintiff contends that Defendant's use of the photos at trial was contrary to governing Delaware law, violated the Court's rulings in the instant case, and was unfairly prejudicial. (PTC Tr. at 6)

The Court disagrees with each of Plaintiff's contentions. Explaining the reasoning for these conclusions requires setting out, in some detail, the pretrial and trial proceedings relating to the photographs.

The Court first confronted the issue of the photographs during the pretrial conference, during which it heard argument on Plaintiff's motion to exclude the photos from trial. The Court denied Plaintiff's motion, stating:

> To the extent the plaintiff doesn't want Dr. Katz to testify about the photographs of the accident, that request is denied. He may rely on the photographs. They will be in evidence,

---

circumstances, the validity of damages determined by the jury should likewise be presumed. Accordingly, a jury award should be set aside only in the unusual case where it is clear that the award is so grossly out of proportion to the injuries suffered as to shock the Court's conscience and sense of justice.") (internal quotation marks omitted).

>and he will be allowed to, if he wishes, render an opinion as
>to the impact of those photographs on his opinion on the issues
>on which he is qualified to opine.

(PTC Tr. at 51-52) The Court added that it would consider giving a limiting instruction to the jury as to the purposes for which the photographs were being admitted. (*Id.*) After the Court's ruling, Plaintiff's counsel stated, "as to Dr. Katz, I understand" that "the photograph testimony can" be used. (PTC Tr. at 59) In a subsequent letter to the Court, Plaintiff's counsel reiterated his understanding that "Your Honor allowed photographs of the Plaintiff's vehicle over Plaintiff's objection." (D.I. 158) Also, consistent with the Court's invitation, he submitted a proposed limiting instruction. (*Id.*)[4]

During the pretrial conference, before ruling on Plaintiff's motion to exclude the photos, the Court inquired as to what would happen with Dr. Katz's testimony if the Court decided to exclude the photos, as the photos were one of the bases for Dr. Katz's opinions. (PTC Tr. at 26) Defense counsel explained that Dr. Katz's deposition had not yet been taken. Therefore, Dr. Katz could testify in the deposition "as to what portion of his opinion is based on photographs and what is based on all of the variety of records that he reviewed." (*Id.*; *see also id.* at 37)

---

[4]Plaintiff states that she is not seeking a new trial based on a contention that the Court's pretrial ruling on the photographs was erroneous. (D.I. 174 at 1) Confusingly, however, Plaintiff continues to insist that admission of the photographs was impermissible under the Delaware Supreme Court's ruling in *Davis v. Maute*, 770 A.2d 36 (Del. 2001). (*Id.*) This is the very issue the Court addressed – and resolved against Plaintiff – during the pretrial conference. Specifically, the Court held that *Davis*' applicability had to be evaluated in light of the Delaware Supreme Court's subsequent ruling in *State Farm v. Enrique*, 3 A.3d 1099 (Del. 2010). Consistent with *Enrique*'s directive that "photographs of [a] plaintiff's car are not per se inadmissible," *id.*, this Court held that the photographs could be used in the instant trial for limited purposes (PTC Tr. at 51-52). In fact, however, Defendant did not actually use the photos at trial for any purpose, as they were never shown to the jury, never admitted, and never the subject of any argument by counsel to the jury. As explained below, there was merely passing reference to the photos in the deposition testimony of Dr. Katz that was read to the jury.

The Court further asked counsel, "do you need some sort of framework by which the two of you will confer following a deposition as to which portions are going to be designated and if anybody has objections to them?" (*Id.* at 37) Defense counsel responded:

> We normally play the entirety [of the deposition] with the exception of any objections on which we would have to ask your Honor to rule in advance. . . . I will let [Plaintiff's counsel] speak for himself on that but normally we just play it for the jury and let the jury hear what it [the witness] has to say.

(*Id.*)

Then Plaintiff's counsel addressed the issue:

> Insofar, your Honor, as the testimony of the doctors are concerned or the witness is concerned, if your Honor can decide these motions in limine . . . before . . . we take these depositions, then obviously that would alleviate . . . whatever we have because we would obviously abide by your Honor's ruling. . . .

(*Id.* at 39-40)

When the Court asked Plaintiff's counsel whether his "intent would be that the entirety of the video deposition other than objected to portions would be played," counsel replied:

> Except for if I object. Yes. Usually, that is what we generally do. We just play the whole thing, except the problem, of course, is it is difficult with Dr. Katz because he has got so much of this in there that we probably have to object. I would have to do a standing objection at the beginning so I do not have to object 20 times. And then, your Honor, if you decided, but – but we would, of course, chop it off. If that is the way it has to be done, that is the way it has to be done.

(*Id.* at 40)

At a later point in the pretrial conference – in the course of granting Plaintiff's motion to exclude evidence of character or prior conduct, including references to Plaintiff's alleged drug-seeking behavior and forgery of prescriptions – the Court instructed:

9

> At the upcoming depositions of the doctors, therefore, the parties
> will have to work together to ensure that if you all think you need
> to question the doctors about these materials that are now excluded
> from evidence that those portions of the deposition will need to be
> segregated in a way that they will not be shown to the jury.

(*Id.* at 51)

The parties took Dr. Katz's deposition during the four weeks between the pretrial conference and the trial. At the very start of the trial, counsel advised the Court that Dr. Katz's deposition testimony would be offered by videotape, that the parties had been working to resolve objections, and that Plaintiff had remaining objections to Dr. Katz's testimony. (Trial Tr., Aug. 30, 2011 at 3-5) Just before trial began, the Court confirmed that the parties were "all aware of the ruling as to what use could be made of the photographs and what use cannot." (*Id.* at 13-14) The Court further elicited the parties' agreement that Plaintiff's proposed limiting instruction would be given at the time the photos were shown to the jury and as part of the final jury instructions. (*See id.*; *see also* Trial Tr., Aug. 31, 2011 at 146)

Immediately before opening statements, Plaintiff's counsel raised "a concern about the photographs so far as they're related to Dr. Katz." (Trial Tr., Aug. 30, 2011 at 75-76) In essence, Plaintiff did not want defense counsel to refer to the photos in her opening statement. (*See id.*) Defense counsel agreed not to do so, and she did not do so.

At the end of the first day of trial, the parties argued Plaintiff's objections to Dr. Katz's deposition testimony. (*Id.* at 249-53) Plaintiff's counsel explained that he had *just one objection* to the Katz testimony, limited only to the questions and responses contained at pages 15-18 of the deposition transcript. (*Id.* at 251-53) Twice counsel confirmed that he had no other objections to Dr. Katz's testimony. (*Id.* at 252 (confirming "*sole objection*") (emphasis added), 253 (agreeing with Court's statement "*there is no objection to any other portion of the Katz testimony from*

10

*either party*") (emphasis added)) The Court sustained Plaintiff's "sole objection," expressly detailing "that is the objection that is from Page 15, Line 19 through Page 18, Line 10." (*Id.* at 253)

The next morning the parties advised the Court that the video version of Dr. Katz's deposition could not be properly edited in time so, instead, the parties would each read their designated portions of the deposition into the record in front of the jury. (Trial Tr., Aug. 31, 2011 at 2-3) Specifically, defense counsel would read the questions she had asked during the direct examination of Dr. Katz (with a stand-in reading Dr. Katz's responses) while Plaintiff's counsel would read the questions he had asked during the cross-examination of Dr. Katz (with the same stand-in reading the responses).

There was also some discussion as to whether the photographs would actually be used to impeach Plaintiff, as the Court's pretrial ruling had permitted. Plaintiff's counsel asserted that he did not "think there will be any reason to cross-examine my client on these photographs because she will readily admit it is not a major accident." (*Id.* at 6) The Court stated that it agreed that "if she [Plaintiff] gets up and admits to everything, it may be that she can make it irrelevant to have the photos." (*Id.* at 8) That is, if Plaintiff testified that the accident did not involve a major impact between the two vehicles, there might be no need to impeach her with the photographs (notwithstanding Plaintiff's prior description of the accident as having involved a "strong" impact).

Subsequently, during her direct examination, Plaintiff gave the following testimony:

> Q. Was this a major accident in any way whatsoever? The accident itself. The car, the impact itself.
>
> A. No, the impact was not a major accident.

11

(*Id.* at 63)

During a break that followed the completion of Plaintiff's direct testimony and most of her cross-examination, the Court inquired as to whether defense counsel still intended to use the photographs with Plaintiff. (*Id.* at 144) Defense counsel requested the opportunity to show Plaintiff and the jury the photos. (*Id.* at 145-46) After hearing further argument, and explaining that the issue presented a "difficult" "discretionary call," the Court ruled that it would ***not*** permit the photos to be shown to the jury. (*Id.* at 150)

The Court elaborated:

> Ms. Christman [defense counsel] may cross-examine Ms. Adams [Plaintiff] on what type of impact was there. And if the answers are not consistent with what we heard on direct and Ms. Christman wants me to reevaluate my ruling, I will; but if the answers are consistent with what I heard on direct today, then my ruling on the photos not coming in will stand.

(*Id.* at 150-51)

The Court's revised ruling relating to the photographs – which was necessitated by the substance of Plaintiff's testimony at trial, which unexpectedly differed from what she had previously stated about the impact on her vehicle from the accident – was limited to Plaintiff's testimony and the admissibility of the photos. While the ruling also had arguable implications for the forthcoming testimony of Dr. Katz – implications that would, ideally, have been perceived by the parties and drawn to the attention of the Court – it did nothing to alter the Court's ruling on what remained the "sole objection" to Dr. Katz's testimony.

After the Court gave its revised ruling, defense counsel completed her cross-examination of Plaintiff. A portion of that examination was as follows:

12

> Q. ... [D]o you remember me in your deposition asking you about the impact involved in the accident? ... And what do you remember happening in the accident? And your response was I was struck very hard; is that correct?
>
> A. I was struck very hard.
>
> Q. And you now agree that that testimony was not correct. This was a very minor, mild impact; correct?
>
> A. Mild impact. (Nodding yes.)
>
> Q. And you agree that what you told Dr. Katz and what you told Dr. King about the type of impact was not accurate; correct? When you told them it was a very strong impact and that you were hit by a vehicle traveling at a high rate of speed, that that was wrong; is that correct?
>
> A. That's correct.

(Trial Tr., Aug. 31, 2011 at 155-56) In full compliance with the Court's revised ruling, counsel did not use, display, or even reference the photographs during her examination of Plaintiff.

After Plaintiff completed her testimony and Defendant testified, Defendant then called Dr. Katz to testify by deposition transcript. (*See id.* at 175) As agreed, defense counsel began to read the questions and answers from her portion of the deposition, ***none of which had been objected to by Plaintiff***. (Trial Tr., Aug. 31, 2011 at 175-83) The still unobjected to deposition testimony, which defense counsel read to the jury, included the following questions and answers:

> Q. ... Did you also have the opportunity to review some photographs that showed the plaintiff's vehicle after the accident?
>
> A. Yes.

13

> Q. And I then when you saw them they were probably black and white photographs, but I'll show you a couple of photographs now that are color photographs that you can also show to the jury.
>
> When you reviewed the black-and-white photographs, did you see any evidence of damage on those photographs?
>
> A. I did not. Again, I commented they were photocopies, so black and white copies of the color, and so I couldn't – I couldn't discern any damage.
>
> Q. I'm going to show you what is A-009 and A-009A and 9A actually shows the entire rear of plaintiff's vehicle and 9 shows a close-up of the rear did you see that?
>
> A. Yes.

(*Id.* at 183-84)

At this point, Plaintiff's counsel interrupted the reading of the transcript and the Court met with counsel at a sidebar. Plaintiff's counsel began, "[t]his is all supposed to be stricken." (Trial Tr., Aug. 31, 2011 at 184) The Court responded that defense counsel had not yet reached the portion of the testimony that was the subject of Plaintiff's sole objection, pages 15-18. Then the Court added: "I think what happened is in light of my ruling today we did not go back and amend what should be read from this deposition. But at this point, I think we should, we should strike the portions relating to the photographs." (*Id.*) After hearing further from both sides (still outside the presence of the jury), the Court instructed defense counsel to stop reading the portion of the transcript at which she had been stopped and to pick up with the portion that followed all of what Plaintiff had initially objected to; i.e., she was to begin reading again at page 18, line 11. (*Id.* at 185) After the Court explained to the jury "we're going to skip a few pages now," defense

14

counsel proceeded precisely in accordance with the Court's direction. (*Id.*)[5]

Even though Plaintiff's counsel had a copy of the Katz deposition transcript in front of him, at no point did he identify any other portions of the Katz testimony to which he now objected. Instead, just as Plaintiff's counsel had not attempted to amend his objections following the Court's revised ruling regarding the photos, now again he failed to amend his objections to the Katz testimony. Thus, the Court was not asked to – and did not – make any rulings about the remainder of the still unobjected to Katz testimony. Consequently, defense counsel eventually read the following question and answer to the jury:

> Q. And then in terms of determining whether either the fracture or the herniated disc came from the incident on April 23, 2002, do her statements to you and others about the force of the impact versus what shows up in the photographs have any meaning in determining what caused her problems?
>
> A. Just answer that specific question. The force of the impact as available indicators, no, it would not explain it, and obviously many more things than just looking at the pictures goes into it. Looking at the patient, doing examinations, et cetera, but the answer is no.

(*Id.* at 207)

Even after this portion of testimony was read, with its reference to Dr. Katz's review of the photographs, Plaintiff's counsel did not object, ask that the testimony be stricken, nor even request another sidebar. Instead, after defense counsel had completed reading Katz's direct

---

[5] As already excerpted above, the Court stated during the sidebar, "I think we should, we should strike the portions [that had just been read] relating to the photographs" and both parties agreed. (Trial Tr., Aug. 31, 2011 at 184) Then the Court added: "Certainly stop reading it. Do you want us to strike the last page? All the jury has heard, he saw photographs." (*Id.* at 184-185) Nothing was actually stricken, and Plaintiff never again requested that the Court strike this or any other portion of Dr. Katz's testimony.

15

testimony, the Court called the parties to sidebar and observed that defense counsel "had a spot where there was reference to the photograph . . . [and] I thought you [defense counsel] handled that fine. We don't need to draw more attention to it." After this, the transcript shows Plaintiff's counsel volunteering, "Yes." (*Id.* at 211)

Still at sidebar, the Court advised Plaintiff's counsel that it appeared there was at least one additional question and answer that Plaintiff's counsel intended to read which would again mention the photos. Plaintiff's counsel stated that he wanted to read that excerpt to the jury, and defense counsel did not object. (*Id.* at 211-12) Thus, in the course of reading his portions of the testimony to the jury, Plaintiff's counsel put in the record the following question and answer:

> Q. Now, doctor, you were asked about the photos and the question about the impact and so forth. You agree with me of course that every person is different as far as their physical makeup is concerned, their condition, their susceptibility to being injured and so forth; correct?
>
> A. Yes.

(*Id.* at 219)

There was no reference by either side to the photographs at any subsequent point during the evidentiary portion of the trial or during closing arguments. Then, during deliberations, the jury sent a note to the Court: "Were there pictures of both cars involved in accident of 4/23/02? Are they available for review?" (Trial Tr., Sep. 1, 2011 at 114) With the agreement of the parties, the Court responded to the note as follows: "In response to your questions, you are instructed to make your decision based on the evidence before you. The evidence is closed. Nothing further may be introduced into evidence at this point." (*Id.* at 117)

Plaintiff argues that "[t]he reference to photographs was a prejudicial and crucial error *as*

*evidenced by the jury's request to see the photographs*." (D.I. 172 at 2 (emphasis added); *see also* D.I. 174 at 4 ("The fact that Dr. Katz's reference to the photos was not harmless error is re-enforced by the fact that the jury requested to see the photos. They heard Dr. Katz's improper testimony concerning the photos and they apparently relied on that testimony . . . .")) Plaintiff's conclusions are entirely unsupported by what actually occurred. To the contrary, it seems obvious from the note that the jury was uncertain whether photos of the vehicles even existed. At minimum, this strongly suggests that Plaintiff was not at all prejudiced by the four passing references (all of which are excerpted in their entirety above, and one of which was read to the jury by Plaintiff's counsel himself) to the photos during the reading of Dr. Katz's testimony.[6]

As is evident from the foregoing, lengthy recitation of the proceedings relating to the photographs, at no point did defense counsel violate any order or instruction of the Court. Indeed, Defendant never attempted to show the photos to the jury; all three references to the photos that she read to the jury were contained in *portions of Dr. Katz's deposition testimony that were not objected to by Plaintiff*. Plaintiff's "sole objection" to three pages of that deposition was sustained and defense counsel did not read those three pages to the jury.

At worst, the problem that arose was that neither the parties nor the Court thought to revise the Katz deposition designations in light of the Court's revised ruling earlier that day regarding the use of the photographs. If this is what occurred, Plaintiff's counsel is at least as responsible for the oversight as anyone else. In all events, the Court finds that nothing that occurred with respect to the photographs remotely warrants a new trial.

---

[6] It follows that, even assuming there was error in the handling of the issues relating to the photographs (and the Court concludes that there was not), such error would have been harmless.

17

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion for New Trial (D.I. 173) is DENIED. The Clerk of Court is directed to enter judgment in favor of the Defendant and against Plaintiff and to CLOSE the case.

August 31, 2012

UNITED STATES DISTRICT JUDGE